IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| CANADIAN SOLAR INT'L, LIMITED ET. AL. | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| NEXTERA ENERGY CONSTRUCTORS | ) |
| Plaintiff-intervenor | ) |
| | ) |
| v. | ) Court Nos. 23-00222, -00227 |
| | ) |
| UNITED STATES | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AUXIN SOLAR INC., | ) |
| Defendant-intervenor. | ) |

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS
<u>FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, Jr.
Assistant Director

STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-5196
Email: stephen.tosini@usdoj.gov

September 25, 2024                    Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONROABLE M. MILLER BAKER, JUDGE

———————————————————
CANADIAN SOLAR INT'L, LIMITED, )
*ET AL.*,                       )
                               )
    Plaintiffs,             )
                               )
    and                     )
                               )
NEXTERA ENERGY CONSTRUCTORS, )
LLC,                           )
                               )
    Plaintiff-intervenor,   )
                               )
    v.                      ) Court Nos. 23-00222, -00227
                               )
UNITED STATES,                 )
                               )
    Defendant,              )
                               )
    and                     )
                               )
AUXIN SOLAR INC.,              )
                               )
    Defendant-intervenor.   )
———————————————————  )

## ORDER

On consideration of plaintiffs' and plaintiff-intervenor's motions for judgment on the administrative record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the motions are denied and, it is further

ORDERED that judgment is entered for the United States.


Dated:_____                              _____

     New York, N.Y.                                     JUDGE

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ............................................2

I.     Administrative Determination Under Review ...........................2

II.    Issues Presented for Review........................................................2

STATEMENT OF FACTS ............................................................3

I.     Legal Framework For Circumvention Inquiries Under
       19 U.S.C. § 1677j(b) ......................................................................3

II.    Background and Initiation Of Circumvention Proceeding.........6

III.   Preliminary Determination ........................................................7

IV.    Final Determination ................................................................. 12

SUMMARY OF THE ARGUMENT ......................................... 13

ARGUMENT ............................................................................ 14

I.     Standard Of Review ................................................................. 14

II.    Canadian Solar's And Triana's Level of Research And Development
       Carried In Thailand Was Minor ........................................................ 16

III.   Commerce's Finding that Trina's Processing in Thailand      Accounted
       for a Small Proportion of the Total Value of Its U.S. Sales is Supported
       by Substantial Evidence and in Accordance with Law ............... 19

IV.    Commerce's Determination that the Production Process in Thailand
       was Minor or Insignificant for Both Companies is Supported by
       Substantial Evidence.................................................................. 25

       A.     Commerce Reasonably Placed Particular Emphasis on R&D
              .............................................................................. 26

B.    Commerce Reasonably Considered the Minor or Insignificant Factors to Find the Production Process in Thailand to be Minor .................................................................................... 32

V.    Commerce's Finding that Action Was Warranted Under the Statute to Prevent Circumvention is Supported by Substantial Evidence.. 34

CONCLUSION ......................................................................... 38

# TABLE OF AUTHORITIES

## CASES

*Al Ghurair Iron & Steel LLC v. United States,*
    536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ..................................*passim*

*Al Ghurair Iron & Steel LLC v. United States,*
    65 F.4th 1351 (Fed. Cir. 2023) ........................................................*passim*

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556 (Fed. Cir. 1984) .............................................................. 15

*Bell Supply Co., LLC v. United States,*
    888 F.3d 1222 (Fed. Cir. 2018) .............................................................. 35

*Cleo Inc. v. United States,*
    501 F.3d 1291 (Fed. Cir. 2007) .............................................................. 15

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ................................................................................. 15

*Fujitsu Gen. Ltd. v. United States,*
    88 F.3d 1034 (Fed. Cir. 1996) ................................................................ 14

*Goldlink Indus. Co. v. United States,*
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................ 15

*HLDS Steel Sdn Bhd v. United States,*
    No. 21-00638, 2024 WL 244937 ................................................ 17, 34, 35

*Hung Vuong Corp. v. United States,*
    483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ........................................ 18

*Hyundai Elec. & Energy Sys. Co. v. United States,*
    15 F.4th 1078 (Fed. Cir. 2021) ............................................................ 22

*INS v. Elias-Zacarias,*
    502 U.S. 478 (1992) ............................................................................... 15

*Lignite Energy Council v. United States EPA,*
    198 F.3d 930 (D.C. Cir. 1999) .............................................................. 5

*Nielsen v. Preap,*
    586 U.S. 392 (2019) ............................................................................... 20

*NSK Ltd. v. United States,*
    358 F. Supp. 2d 1276 (Ct. Int'l Trade 2005) .................................... 18

*NSK Ltd. v. United States,*
    162 F. App'x 982 (Fed. Cir. 2006) ..................................................... 18

*Save Domestic Oil, Inc. v. United States,*
    357 F.3d 1278 (Fed. Cir. 2004) ........................................................... 22

*SeAH Steel Corp. v. United States,*
    659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) .................................... 18

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
    203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) .............................. 15, 16

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998) ........................................................... 36

*United States v. Eurodif S.A.,*
  555 U.S. 305 (2009) .................................................................................... 14

## STATUTES

19 U.S.C. § 1677j(b)(2) ....................................................................................... 12

19 U.S.C. § 1516a(b)(1)(B) ................................................................................. 14

19 U.S.C. § 1677(b)(2) ......................................................................................... 8

19 U.S.C. § 1677j(b)(1) ................................................................................*passim*

19 U.S.C. § 1677j(b)(2)(A) ...................................................................... 9, 10, 23

19 U.S.C. § 1677j(b)(2)(B) ...................................................................... 16, 23, 30

19 U.S.C. § 1677j(b)(2)(C) ............................................................................... 20

19 U.S.C. § 1677j(b)(2)(E) ......................................................................... 20, 22

19 U.S.C. § 1677j(b)(3) ............................................................................. 5, 10, 35

42 U.S.C. § 7411(a)(1) ................................................................................. 5, 37

## REGULATIONS

19 C.F.R. § 351.225(h) ........................................................................................ 4

## ADMINISTRATIVE DETERMINATIONS

*Antidumping and Countervailing Duty Orders on Crystalline Silicon*
  *Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*
  *People's Republic of China,*
  87 Fed. Reg. 75,221 (Dep't of Commerce May 12, 2022) ......................... 7

*Antidumping and Countervailing Duty Orders on Crystalline Silicon*
  *Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

*People's Republic of China,*
   88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023) ....................... 2

*Certain Pasta from Italy,*
   68 Fed. Reg. 46,571 (Dep't Commerce Aug. 6, 2003) ........................... 21

*Certain Tissue Paper Products from the People's Republic of China,*
   73 Fed. Reg. 21,580 (Dep't Commerce Apr. 22, 2008) .......................... 23

*Certain Walk-Behind Lawn Mowers and Parts Thereof From the People's
   Republic of China,*
   88 Fed. Reg. 13,434 (Dep't Commerce Mar. 3, 2023) ........................... 36

*Certain Welded Carbon Steel Standard Pipes and Tubes from India,*
   87 Fed. Reg. 52,507 (Dep't Commerce Aug. 26, 2022) .......................... 31

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into
   Modules, From the People's Republic of China,*
   77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) ......................... 6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into
   Modules, From the People's Republic of China,*
   87 Fed. Reg. 19,071 (Dep't of Commerce Apr. 1, 2022) ......................... 6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully
   Assembled Into Other Products,*
   Inv. No. TA-201-075, Publication 5021 (Feb. 7, 2020)
   (*ITC Report*) at I-62 ............................................................ 7

*Ferrovanadium and Nitrided Vanadium From the Russian Federation,*
   77 Fed. Reg. 6,537 (Dep't Commerce Feb. 8, 2012) ............................ 23

*Ferrovanadium and Nitrided Vanadium From the Russian Federation,*
   77 Fed. Reg. 46,712 (Dep't Commerce Aug. 6, 2012) .......................... 21

*Small Diameter Graphite Electrodes from the People's Republic of China,*
   77 Fed. Reg. 33,405 (Dep't of Commerce Jun. 6, 2012) ........................ 21

*Small Diameter Graphite Electrodes from the People's Republic of China,*
   77 Fed. Reg. 47,596 (Dep't of Commerce Aug. 9, 2012) ........................ 17

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONROABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| ———————————————— ) | | |
| CANADIAN SOLAR INT'L, LIMITED, ) | | |
| *ET AL.*,                         ) | | |
|                                  ) | | |
|     Plaintiffs,          ) | | |
|                                  ) | | |
|     and                  ) | | |
|                                  ) | | |
| NEXTERA ENERGY CONSTRUCTORS, ) | | |
| LLC,                             ) | | |
|                                  ) | | |
|     Plaintiff-intervenor, ) | | |
|                                  ) | | |
|     v.                   ) | Court Nos. 23-00222, -00227 | |
|                                  ) | | |
| UNITED STATES,                   ) | | |
|                                  ) | | |
|     Defendant,           ) | | |
|                                  ) | | |
|     and                  ) | | |
|                                  ) | | |
| AUXIN SOLAR INC.,                ) | | |
|                                  ) | | |
|     Defendant-intervenor. ) | | |
| ———————————————— ) | | |

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS
<u>FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>

    Defendant, the United States, respectfully responds to the motions for

judgment on the administrative record filed by plaintiffs, Canadian Solar

International Limited and Canadian Solar Manufacturing (Thailand) Co.,

Ltd. (collectively Canadian Solar) and Trina Solar Science & Technology

(Thailand) Ltd. (Trina) and by plaintiff-intervenor, NextEra Energy Constructors Inc. Ct. No. 23-00222 ECF Nos. 39-40, 42; Ct. No. 23-00227 ECF Nos. 43-44, 46 (Pl. Br.); Ct. No. 23-00222 ECF No. 43; Ct. No. 23-20027 ECF No. 47 (NextEra Br.). The Court should sustain the final determination because it is supported by substantial evidence and in accordance with law.

STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Determination Under Review

The administrative determination under review is the final determination of circumvention of the antidumping and countervailing duty orders on solar cells from China, issued and published as *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023) (final determination of circumvention) (*Final Determination*), and the Issues and Decision Memorandum with respect to Thailand (IDM), Appx1056-1124.

II.    Issues Presented for Review

1.    Whether Commerce's finding that the value added in Thailand by Canadian Solar is small is supported by substantial evidence.

2.    Whether Commerce's finding that the level of R&D carried out by Canadian Solar in Thailand is minor is supported by substantial evidence.

2

3.    Whether Commerce's finding that the overall production process in

Thailand for Canadian Solar and Trina is minor or insignificant is

supported by substantial evidence.

4.    Whether Commerce's determination that a finding of circumvention

was necessary to prevent circumvention of the antidumping and

countervailing duty orders on solar cells from China is supported by

substantial evidence.

STATEMENT OF FACTS

I.    Legal Framework For Circumvention Inquiries Under 19 U.S.C.
      § 1677j(b)

To prevent circumvention of antidumping and countervailing duty

orders, the statute permits Commerce to include within the scope of an order

merchandise completed in a foreign country other than the order country if

certain criteria are met.  19 U.S.C. § 1677j(b).  Commerce may do so if

> (A) {the} merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of {an order},
>
> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which . . . is subject to the order . . . or  . . . produced in a foreign country . . . to which such order . . . applies,
>
> (C) the process of assembly or completion in the foreign country . . . is minor or insignificant,

3

(D) the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States, and

(E) action is appropriate . . . to prevent evasion of such order.

19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.225(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order, at any time such order is in effect, imported merchandise completed or assembled in a foreign country other than the country to which the order applies").

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. §1677j(b)(1)(C), the statute directs Commerce to "take into account"

(A) the level of investment in the foreign country,

(B) the level of research and development in the foreign country,

(C) the nature of the production process in the foreign country,

(D) the extent of the production facilities in the foreign country, and

(E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).  No single factor controls.  19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in*

1994 U.S.C.C.A.N. 4040.  Additionally, when, as in this case, Congress has

prescribed factors but not their relative weight, the agency is granted "a

great degree of discretion in balancing them."  *Lignite Energy Council v.*

*United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the

Environmental Protection Agency was granted discretion to balance factors

in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

    The statue identifies additional, non-exhaustive, discretionary factors

to consider in weighing whether to find circumvention.  Commerce thus will

"take into account such factors as"

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise . . .
> described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the
> person who uses the merchandise described in {19 U.S.C.
> § 1677j(b)(1)(B)} to assemble or to complete in the foreign country
> the merchandise that is subsequently imported into the United
> States; and
>
> (C) whether imports into the foreign country of the merchandise
> described in {19 U.S.C. § 1677(b)(1)(B)} have increased after the
> initiation of the investigation that resulted in the issuance of
> such order.

19 U.S.C. § 1677j(b)(3).

    Congress intended to "authorize {Commerce} to apply . . . orders in such

a way as to prevent circumvention and diversion of U.S. law."  Omnibus

Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-

71 (S. Rep.), at 101 (1987).  Commerce thus possesses "substantial discretion

in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . {and to} use {its} authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id.* at 100.

II.    Background and Initiation Of Circumvention Proceeding

Commerce issued antidumping and countervailing duty orders on solar products from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) (collectively *Solar Orders*).

Auxin Solar Inc. (Auxin), a domestic producer of solar modules, requested that Commerce initiate a circumvention inquiry to determine whether solar cells and modules from four countries (Cambodia, Malaysia, Thailand, and Vietnam) that use parts and components from China are circumventing the *Solar Orders*. Appx1001. Commerce initiated the requested inquiry. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 19,071 (Dep't of Commerce Apr. 1, 2022) (*Initiation*), and selected Trina and Canadian Solar as mandatory respondents. Appx1001.

6

III.   Preliminary Determination

Commerce published its preliminary determination, preliminarily finding that Trina and Canadian Solar circumvented the *Solar Orders* and that circumvention of the orders was occurring in Thailand on a country-wide basis. *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 75,221 (Dep't of Commerce May 12, 2022) (Prelim. Circ. Det.) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM), Appx1001-1026.

Commerce described the general production process for solar modules in four steps.  First, raw polysilicon is heated, melted, and cooled to form a polysilicon ingot.  PDM at 17 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products*, Inv. No. TA-201-075, Publication 5021 (Feb. 7, 2020) (*ITC Report*) at I-62), Appx1016. Second, the ingot is sliced, typically using a diamond wire saw, into polysilicon wafers.  *Id.* (citing *ITC Report* at I-64).  Third, polysilicon wafers undergo several chemical treatments, including the formation of a positive-negative (p/n) junction, which converts the polysilicon wafers into solar cells. *Id.* at 17-18 (citing *ITC Report* at I-65-I-66), Appx1016-1017.  Commerce explained that the formation of the p/n junction is the step of the production process at which the solar cell is capable of converting sunlight into

7

electricity and thus defines a cell's country of origin.  PDM at 19, Appx1018.

Fourth, solar cells are soldered into strings and placed onto a layer of solar

glass and ethyl vinyl acetate (EVA) and covered by another layer of EVA and

backsheet.  The solar cells are then cured and encased in aluminum frames,

and a junction box is attached to create a finished solar module.  *Id.* at 18

(citing *ITC Report* at I-67), Appx1017.

Commerce preliminarily found that Canadian Solar and Trina

performed the third and fourth steps above (the cell and module steps) in

Thailand.  *Id.* at 14, Appx1013.  Commerce also found that solar modules

exported by Canadian Solar and Trina from Thailand to the U.S. are of the

same class or kind of merchandise as the merchandise subject to the *Solar*

*Orders*, and that they were completed in Thailand using parts and inputs

from China.  *Id.* at 13-14.  Commerce similarly concluded that those parts

and inputs are a significant portion of the total value of the completed solar

modules exported by Canadian Solar and Trina.  *Id.* at 21, Appx1020.

Commerce then determined that the process of assembly or completion

of solar cells by Canadian Solar and Trina in Thailand was minor or

insignificant.  *Id.* at 15, Appx1014.  Commerce evaluated the five factors

identified in 19 U.S.C. § 1677(b)(2) with respect to production in Thailand:

(A) the level of investment; (B) the level of research and development (R&D);

(C) the nature of the production process; (D) the extent of the production

process; and (E) the value added as a proportion of the total value of the respondents' U.S. exports of solar cells and modules.

First, under section 1677j(b)(2)(A), Commerce found that the level of investment by both Canadian Solar and Trina in Thailand was not minor or insignificant when compared to the level of investment of their affiliates in China. PDM at 16, Appx1015. Second, turning to subparagraph (B), Commerce found that the level of R&D carried out by Trina and Canadian Solar in Thailand was minor or insignificant when compared to the R&D carried out by their respective Chinese parent companies. Commerce also found that Trina did not incur any R&D-related expenses from 2019-2021. *Id.* at 17, Appx1016. Third, under subparagraph (C), Commerce found that the nature of the production process for solar cells and solar modules, which both respondents carried out in Thailand, is not minor or insignificant when compared to the production process for polysilicon ingots and solar wafers. *Id.* at 18-20, Appx1017-1019. Fourth, under subparagraph (D), Commerce found that the extent of Trina's and Canadian Solar's production facilities (including the size, capacity, and number of employees for each company's factories) are not minor or insignificant when compared to their Chinese affiliates' production facilities. *Id.* at 20, Appx1019. Fifth, turning to subparagraph (E), Commerce found that the value of processing in Thailand

carried out by Trina and Canadian Solar represents a small proportion of the total value of each company's exports of solar cells to the U.S. *Id.*

In analyzing level of investment, level of research and development, and extent of production facilities (subparagraphs (A), (B) and (D)), Commerce compared the respondents' production of solar cells and modules in Thailand and their affiliates' production of polysilicon ingots and wafers in China. PDM at 216-17, Appx1015-16.

Commerce evaluated the totality of the five 19 U.S.C. § 1677j(b)(2) factors and concluded that the production process in Thailand for Trina and Canadian Solar is minor or insignificant. PDM at 14-21, Appx1013-1020. Commerce explained that, for the purposes of its analysis, it had placed special emphasis on the level of R&D carried out in Thailand because of the uniquely complex nature of solar cell and module production. *Id.*

Further, turning to the discretionary factors "such as" those under 19 U.S.C. § 1677j(b)(3), Commerce considered patterns of trade, level of affiliation between the respondents and their Chinese suppliers, and whether imports of solar inputs to Thailand from China had increased following the initiation of the investigation which led to the *Solar Orders*. PDM at 21-23, Appx1020-1022. Commerce first found under subparagraph (C), based on publicly available import data, that the level of imports of solar cells from Thailand to the United States increased dramatically during the period from

10

2011 (the year of the initiation of the investigation which led to the *Solar Orders*) to 2021 (the year in which the underlying circumvention inquiries were initiated). *Id.* at 22, Appx1021. Commerce found that the publicly available trade data evinced a shift in export volume to the United States from China to Thailand, and therefore supported a finding of circumvention. *Id.* Commerce also found that the trade patterns of individual respondents, while business proprietary, also supported a finding of circumvention. *Id.*; *see also* Trina Preliminary Analysis Memorandum (Dec. 9, 2022) (P.R. 506/C.R. 223) at 4-6, Appx1041-1043; Canadian Solar Preliminary Analysis Memorandum (P.R. 508/C.R. 225) at 4-6, Appx1050-1052.

Second, Commerce examined the record through the prism of subparagraph (B) and found that Trina is a subsidiary of Trina Solar Co., Ltd., a Chinese company, and is part of the Trina group of Chinese solar producers. *Id.* at 22, Appx1021; *see also Trina Preliminary Analysis Memo* at 6, Appx1043. Commerce found that Canadian Solar is a subsidiary of Canadian Solar Inc., a Canadian company that is part of the Canadian Solar group that includes Chinese solar producers. *Id.* at 23, Appx1022; *see also Canadian Solar Analysis Memo* at 6, Appx1052. Commerce also found that both respondents are affiliated with Chinese producers that provided them parts and components for producing solar cells in Thailand. *Id.* at 22-23, Appx1021-1022.

11

Third, Commerce found under subparagraph (C) that imports of wafers and other solar inputs from China to Thailand increased from 2008 (the year of initiation of the underlying solar investigations) to 2021 (the of initiation of the circumvention inquiries). *Id.* at 23, Appx1022. Commerce ultimately concluded that all three of these factors weighed in favor a finding that circumvention occurred in Thailand. *Id.*

IV.  Final Determination

Commerce made no significant changes to its *Preliminary Determination* and continued to find that Trina and Canadian Solar circumvented the *Solar Orders* and that circumvention was occurring in Thailand on a country-wide basis. *See generally* IDM, Appx1056-1224.

In response to comments received by Trina, Canadian Solar, NextEra, Auxin, among other interested parties, Commerce explained in the final determination that it applied a "a comparative approach that account{ed} for the production activities of the upstream affiliates of the third country producers." *Id.* at 23, Appx1078. Commerce added that, for the purposes of this inquiry, it placed particular emphasis on the affiliation between the Thai respondents and their Chinese parent companies. *Id.* Commerce also explained its rationale for weighing the level of R&D over the other 10 U.S.C. § 1677j(b)(2) "minor or insignificant" factors, and its findings with respect to each factor. *Id.* at 39-67, Appx1094-1122. Lastly, Commerce explained that

12

inclusion of circumventing merchandise in the scope of the *Solar Orders* is necessary to prevent evasion. *Id.* at 76-77, Appx1131-1132.

## SUMMARY OF THE ARGUMENT

The final determination is supported by substantial evidence.

First, Commerce's finding that Canadian Solar's level of R&D in Thailand was minor is supported by substantial evidence. When evaluating whether third-country production process is minor or insignificant, Commerce follows its practice, approved by the United States Court of Appeals for the Federal Circuit, of comparing third-country production to the entire production. Applying this methodology, Commerce found that Canadian Solar's level of R&D in Thailand is minor relative to that of its Chinese parent.

Second, Commerce's finding that the value added by Canadian Solar in Thailand was small is supported by substantial evidence. Plaintiffs and NextEra urge that Commerce should have considered the nature of the production process as part of the value added in Thailand. But Commerce appropriately followed the statute and legislative history to determine that the value added in the third country should be a quantitative analysis.

Third, the overall production process for the two respondents is minor or insignificant. Commerce reasonably emphasized the level of R&D as a factor when considering the totality of the statutory factors. Consistent with

the congressional directive to evaluate the paragraph (b)(2) factors according to the particular circumvention scenario in this case, Commerce found that this scenario involved vertically integrated Chinese producers spinning off the final stage of production into Thailand.  Based on that scenario, Commerce reasonably found that the fungible nature of R&D warranted emphasizing that factor.

Lastly, Commerce lawfully weighed the paragraph (b)(3) factors to determine that including circumventing merchandise in the *Solar Orders* was necessary to prevent circumvention.  Commerce's determination is supported with record evidence that shows that circumvention would occur absent inclusion of the circumventing merchandise in the *Solar Orders*.

## ARGUMENT

I.    Standard Of Review

The Court sustains Commerce's determinations, findings, or conclusions unless they are unsupported by substantial evidence on the record, or otherwise unlawful.  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.").  Substantial evidence connotes "more than a mere scintilla" and "such relevant evidence

14

as a reasonable mind might accept as adequate to support a conclusion,"
based on the entire record, including whatever fairly detracts from the
substantiality of the evidence. *Atl. Sugar, Ltd. v. United States*, 744 F.2d
1556, 1562 (Fed. Cir. 1984) (cleaned up). Substantial evidence may be "less
than the weight of the evidence," and the possibility of drawing inconsistent
conclusions from the record does not render findings unsupported by
substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Indeed, when Congress entrusts an agency to administer a statute that
demands inherently fact-intensive inquiries, agency conclusions may be set
aside only if the record is "so compelling that no reasonable factfinder" could
reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84
(1992); *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d
1327, 1338 (Ct. Int'l Trade 2017) (recognizing "tremendous" deference to
Commerce factual findings). It is thus improper to overturn a determination
"simply because the reviewing court would have reached a different
conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d
1291, 1296 (Fed. Cir. 2007) (citations omitted), and the Court will not
substitute its judgment for Commerce's in choosing between two fairly
conflicting views, even if it could "justifiably have made a different choice had
the matter been before it *de novo.*" *Goldlink Indus. Co. v. United States*, 431
F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

15

II.    Canadian Solar's And Triana's Level of Research And Development
       Conducted In Thailand Was Minor

The statute directs Commerce to consider the level of R&D in assessing

whether the production process in a third country is minor or insignificant.

19 U.S.C. § 1677j(b)(2)(B).  Because the statute does not direct any specific

methodology, "Commerce has discretion to decide on its own method of

analysis."  *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d

1357 (Ct. Int'l Trade 2021) (*Al Ghurair I*), *aff'd,* 65 F.4th 1351 (Fed. Cir. 2023)

(*Al Ghurair II*).  Commerce found that the level of R&D carried out in

Thailand by Canadian Solar, when compared to the level of R&D carried out

by its Chinese parent, was minor.  IDM at 43-44, Appx1098-1099; *see also*

Canadian Solar Preliminary Analysis Memo at 2, Appx1048.

Plaintiffs contend that Commerce failed to consider several factors

pertaining to the nature of Canadian Solar's R&D in Thailand, including the

number of employees dedicated to R&D and the specific type of research

carried out in Thailand.  Pls. Br. at 47-48 (citing *Canadian Solar IQR* at 7-8

and Exhibit 20 (C.R. 133), Appx10734-10735).  Commerce addressed these

considerations and found that the "amount spent on R&D" outweighed those

considerations.  IDM at 44, Appx1099.  Because Commerce is accorded

"tremendous" deference in weighing record evidence, the Court should

sustain these findings.  *Shandong Rongxin*, 203 F. Supp. 3d at 1338.

16

Commerce fully explained the rationale for weighing the evidence on the level of R&D.  The agency explained that "the purpose of the analysis under section {1677j}(b)(1)(C) . . . is to 'evaluate whether a process is minor or insignificant within the context of the totality of the production of subject merchandise' such that Commerce's analysis addresses 'the relative size and significance of the processing provided by {the respondent} in comparison to the processing necessary to produce the overall finished product.'"  IDM at 24 (quoting *Small Diameter Graphite Electrodes from the People's Republic of China,* 77 Fed. Reg. 47,596 (Dep't of Commerce Aug. 9, 2012) (final circumvention det.)), Appx1079.  In other words, Commerce considers third-country processing in the context of the overall production process, and not in a vacuum.  This Court and the Court of Appeals of the Federal Circuit have sustained Commerce's reasoning in applying this approach.  *See Al Ghurair II*, 65 F.4th at 1360 (explaining that "Commerce reasonably explained that its comparison indicate{d} what portion of the total value of the merchandise subject to these inquiries is accounted for by the last step of processing") (quotation omitted); *see also Hlds (B) Steel Sdn Bhd v. United States*, No. 21-00638, 2024 WL 244937 at *3 (Ct. Int'l Trade Jan. 23, 2024) (same).

Plaintiffs and plaintiff-intervenor dispute Commerce's finding that Canadian Solar's R&D activities in Thailand were minor.  Pls. Br. at 46-49 (citing Canadian Solar Initial Questionnaire Response (Jun. 3, 2022) (C.R.

17

109) (*Canadian Solar IQR*) at 7-8, Appx8801 and Ex. 20 (C.R. 133),

Appx10734-10735); NextEra Br. at 20-21 (citing IDM at 51-52, Appx1106-

1107). But Canadian Solar's R&D activities, standing alone and without

reference to its overall production process, offers little analytical value. The

parties' disagreement is insufficient to overturn Commerce's methodology,

particularly when the statute reserves the choice of methodology to the

agency. "{W}here the relevant statute provides little direction, 'Commerce

enjoys discretion in choosing its methodology.'" *Al Ghurair I*, 536 F. Supp. 3d

at 1374 (quoting *NSK Ltd. v. United States*, 358 F. Supp. 2d 1276, 1291 (Ct.

Int'l Trade 2005), *aff'd*, 162 F. App'x 982 (Fed. Cir. 2006)).

Lastly, whether Commerce verified the level of R&D reported by

Canadian Solar is irrelevant to whether Commerce's determination is

supported by substantial evidence. Pls. Br. at 49-50 (citing Verification

Exhibits (C.R. 255), Appx18669–18706; Canadian Solar Verification Report

(C.R. 280) at 14, Appx19729); NextEra Br. at 20-21 (citing (*Canadian Solar*

*Verification Report*). Verification is not an information-gathering exercise.

Rather, "the purpose of verification is for Commerce to 'confirm information

previously submitted by a respondent in response to Commerce's requests for

information' while also 'test{ing} information provided by a party for accuracy

and completeness.'" *SeAH Steel Corp. v. United States*, 659 F. Supp. 3d 1318

(Ct. Int'l Trade 2023) (quoting *Hung Vuong Corp. v. United States*, 483 F.

Supp. 3d 1321, 1335–36 (Ct. Int'l Trade 2020)). Therefore, Commerce's

verification of Canadian Solar's R&D activities neither adds nor detracts

from Commerce's evaluation of the record evidence, and Commerce's

determination that the level of R&D in Thailand for Canadian Solar is minor

is supported by substantial evidence.

III.    Commerce's Finding that Trina's Processing in Thailand Accounted for
        a Small Proportion of the Total Value of Its U.S. Sales is Supported by
        Substantial Evidence and in Accordance with Law

Commerce calculated the value of processing in Thailand by summing

the per-unit costs incurred by each respondent in the third country for non-

Chinese inputs and divided that number by the per-unit average value of the

respondents' U.S. sales during the period of the inquiry. PDM at 20

(unchanged in *Final Results*), Appx1019; *see also* Final Analysis

Memorandum (P.R. 599/C.R. 292), Appx1240-1248 at Attachment V (P.R.

600/C.R. 293), Appx1249 (excel spreadsheet). Commerce determined t the

value added in the third country for Canadian Solar and Trina. Canadian

Solar Preliminary Analysis Memo at 3, Appx1049; Trina Preliminary

Analysis Memo at 3, Appx2040, Appx1040 (both unchanged in the Final

Results). Commerce found that these facts established that the production in

the third country was minor or insignificant. PDM at 20, Appx1019.

Plaintiffs contend that Commerce failed to consider the nature of the

production process as part of its evaluation of the value added by Canadian

Solar in Thailand.  Pls. Br. at 50-54.  But the plain language of §1677j(b)(2)(E), which provides that Commerce shall consider "whether the *value* of the processing performed in the foreign country represents a *small proportion* of the *value* of the merchandise imported into the United States," envisions quantitative analysis.  To that end, Commerce found that, in the context of value added in the third country, "the word 'value' denotes monetary value."  IDM at 57, Appx1112.

Plaintiffs, citing legislative history, maintain that Congress intended "a more qualitative focus on the nature of the production process."  Pls. Br. at 51 (citing SAA at 893) (quotations excluded).  However, the "nature of the production process" is separately accounted for by paragraph 1677j(b)(2)(C). It would be illogical to evaluate the nature of the production process under both 19 U.S.C. §§ 1677j(b)(2)(C) and 1677j(b)(2)(E).  This would double-count the nature of the production process within the totality of the factors.  Of course, a statutory term should not "needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Nielsen v. Preap*, 586 U.S. 392, 139 S. Ct. 954, 969 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)). And this Court has sustained Commerce's value-added methodology:

> Because {19 U.S.C. § 1677(b)} does not mandate the use of a
> particular formula, Commerce has the ability to choose how to
> calculate the value-added percentages as long as its chosen

methodology is reasonable and Commerce explains its choice.
Commerce is required neither to use a party's proffered and
preferred methodology, nor to provide an explanation for a
decision not to use an alternative methodology offered by a party.

*Al Ghurair I*, 536 F.Supp.3d at 1374. So even if plaintiffs' methodology were

permissible, absent a clear statutory directive, Commerce's choice stands.

Plaintiffs and plaintiff-intervenor further contend that Commerce's

practice is to consider qualitative factors as part of its evaluation of the value

added in the third country. Pls. Br. at 51-52 (citing *Hot-Rolled Lead and*

*Bismuth Carbon Steel Products from Germany and the United Kingdom*, 64

Fed. Reg. 40,336, 40,347 (Dep't Commerce Jul. 26, 1999) (*Hot-Rolled Lead*

*from Germany*) (final det.); *Certain Corrosion-Resistant Steel Products from*

*Taiwan*, 84 Fed. Reg. 32,864 (Dep't Commerce July 10, 2019) (prelim. admin.

det.) and accompanying IDM; *Small Diameter Graphic Electrodes from the*

*People's Republic of China*, 77 Fed. Reg. 33,405, 33,413 (Dep't of Commerce

Jun. 6, 2012) (prelim. det.); *Certain Pasta from Italy*, 68 Fed. Reg. 46,571,

46,575 (Dep't Commerce Aug. 6, 2003) (final det.)); NextEra Br. at 25-26

(citing *Ferrovanadium and Nitrided Vanadium From the Russian Federation*,

77 Fed. Reg. 46,712 (Dep't of Commerce Aug. 6, 2012) (final circumvention

det.), and accompanying IDM at 12; *Certain Corrosion-Resistant Steel*

*Products From Taiwan*, 84 Fed. Reg. 70,937 (Dep't of Commerce Dec. 26,

2019) (final circumvention det.), and accompanying IDM for Vietnam at 9.

21

However, so long as Commerce explains itself, it is not bound by its prior determinations. *Al Ghurair II*, 65 F.4th at 1360 (citing *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021); *Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283–84 (Fed. Cir. 2004)). With respect to the cases cited by plaintiffs and plaintiff-intervenor, Commerce, in this case, explained that,

> Commerce applied Congress's direction to focus more on the nature of the production process and less on value with respect to *the overall decision of whether processing is minor or insignificant* or the overall determination of whether circumvention is occurring and not its determination under {19 U.S.C. § 1677j(b)(2)(E)}.

IDM at 59 (emphasis added), Appx1114.  In other words, the SAA requires Commerce to consider the nature of the production process only when assessing whether the production process *as a whole* is minor or insignificant. Commerce thus considered the nature of the production process separately from its evaluation of the value added.  IDM at 49-53, Appx1104-1108.

Commerce's reasoning is consistent with the SAA.  Although Commerce has acknowledged that "Congress directed the agency to focus more on the nature of the production process and less on the difference between the value of the subject merchandise and the value of the parts and components imported into the processing country{}," this must be understood within the context of the statute that pre-dated the SAA.  That statute contained no

provisions related to the nature of the production process, and instead directed Commerce to determine whether circumvention occurred based on the difference in value between exports to the U.S. and the cost of the inputs purchased from the order country.  PL 100–418, Aug. 23, 1988, 102 Stat 1107 at § 1321 (1988 Statute).  Congress recognized that the "mechanical, quantitative approach" of the 1988 Statute failed to address scenarios when minor assembly is done in a third country, but the difference in value between the value of inputs and the value of the eventual export is not small. SAA at 893.  The enactment of 19 U.S.C. §§ 1677j(b)(2)(A)-(D) resolved the issue with the 1988 statute that the SAA identified.  Accordingly, the shift away from a "mechanical, quantitative approach," as expressed by the SAA is not directed at the current 19 U.S.C. § 1677j(b)(2)(E), and thus, Commerce's methodology is consistent with congressional intent.  IDM at 59.

Plaintiffs lastly assert that Commerce's finding that the value added in Thailand by Canadian Solar is small is inconsistent with prior determinations and "incongruous" with the finding that Trina's value added was not small.  Pls. Br. at 54-56 (citing *Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 6,537, 6,539 (Dep't Commerce Feb. 8, 2012) (prelim. circumvention det.) (*Ferrovanadium from Russia Prelim*); *Certain Tissue Paper Products from the People's Republic of China*, 73 Fed. Reg. 21,580, 21,585-86 (Dep't Commerce Apr. 22, 2008)

23

(prelim. circumvention det.) (*Tissue Paper from China*); and *Hot-Rolled Lead from Germany*, 64 Fed. Reg. at 40,340).

Commerce is not bound by these determinations because they pertain to industries distinct from the solar industry. *Al Ghurair II*, 65 F.4th 1351 at 1360. But assuming for the sake of argument that Commerce was bound by any of these decisions, only *Ferrovanadium from Russia* arguably contradicts what Commerce did in this case. In *Tissue Paper from China*, Commerce found that the approximate value added in the third country was not small, but the value added there was *greater* than that which Commerce calculated for Canadian Solar. *See Tissue Paper from China*, 73 Fed. Reg. at 21,585. In *Hot-Rolled Lead from Germany*, Commerce did not clearly articulate whether a value added in the range of 10 to 29 percent was small, and in any case based its overall negative circumvention determination on factors separate from the value added in the third country. *Hot-Rolled Lead from Germany*, 64 Fed. Reg. at 40,342. Only in *Ferrovanadium from Russia* did Commerce find that a value added lower than that which Commerce calculated for Canadian Solar was not small and, even there, it recognized that such a finding differed from other cases and was based on the high volatility of the price of ferrovanadium during the inquiry period. *Ferrovanadium from Russia*, 77 Fed. Reg. at 6,538-40; *see also* IDM at 60 (distinguishing value added finding in this case from *Ferrovanadium from Russia*).

24

Lastly, that Commerce found the value added by Trina in Thailand not to be small is not "incongruous," Pls. Br. at 56, to its decision regarding Canadian Solar based on differences between the two producers. *Compare Canadian Solar Preliminary Analysis Memo* at 3, Appx1049 with *Trina Preliminary Analysis Memo* at 3, Appx1040 (both unchanged in the *Final Results*). Given these differences, Commerce reasonably reached different conclusions.

IV.   Commerce's Determination that the Production Process in Thailand was Minor or Insignificant for Both Companies is Supported by Substantial Evidence

To find that merchandise which is assembled or completed in a third country circumvents an order, Commerce must find the third-country production process to be minor or insignificant. 19 U.S.C. § 1677j(b)(1)(C). The statute provides five factors that Commerce "shall take into account" when determining whether the production process is minor but does not otherwise instruct Commerce how to evaluate the factors. The legislative history provides that Commerce will evaluate the factors "depending on the particular circumvention scenario" and that "{n}o single factor will be controlling." SAA at 893. Congress recognized "the need for flexibility in administering this standard." *Al Ghurair I*, 536 F.Supp.3d at 1375 (quoting S. Rep. 103-412 at 82).

A.  Commerce Reasonably Placed Particular Emphasis on R&D

In determining whether the production process for solar modules in Thailand was minor or insignificant, Commerce placed particular emphasis on the level of R&D in Thailand.  IDM at 65, Appx1120.  Commerce first found that R&D is a particularly important factor in the solar industry.  In 2021 alone, the Trina Group invested $150 million and the Canadian Solar Group invested $58 million in R&D.  *Id.* (citations omitted).  LONGi, another leading Chinese solar producer, invested over $400 million in R&D in 2020. *Id.*  Therefore, substantial evidence supports Commerce's determination that R&D "has preeminent importance in the solar industry."  *Id.*

Plaintiffs urge that R&D is important for all industries and that the solar industry is not unique.  Pls. Br. at 40.  But they offer no support for this position and no evidence to rebut the information cited by Commerce.  IDM at 65, Appx1120.  Moreover, as plaintiffs acknowledge, Commerce has found in other circumvention determinations that R&D is not an important factor. *See Light-walled Rectangular Pipe and Tube From the People's Republic of China* 88 Fed. Reg. 21,985 (Dep't of Commerce Apr. 12, 2023) (prelim. circumvention det.), and accompanying PDM at 21 (finding that, for the light-walled rectangular pipe and tube industry, R&D is not a significant factor); *Hot-Rolled Lead and Bismuth Carbon Steel Products from Germany and the United Kingdom*, 64 Fed. Reg. 40,336, 40,339 (Dep't of Commerce Jul. 26,

26

1999) (final circumvention det.) (*Hot-Rolled Lead from Germany*) ("Because the rolling of hot-rolled lead bar is a technically mature process, {R&D} is not a significant factor in this industry.").  Plaintiffs thus fail to rebut the finding that R&D is a particularly important consideration for the solar industry.

Further in support of its determination to emphasize the R&D factor, Commerce found that the circumvention scenario in this case centered on Chinese input suppliers and their parent companies using a fully-integrated supply chain to circumvent the *Solar Orders*.  IDM at 23, Appx1078 (citing *Circumvention Request* (C.R. 2) at 1-2, Appx1263-1264).  Commerce's factual findings clarify the nature of the relationship between the Thai producers and their affiliated Chinese suppliers.  Commerce found that nearly all or all of the investment necessary to operate Trina's and Canadian Solar's Thai facilities were arranged by Chinese parent companies.  IDM at 66, Appx1121 (citing Canadian Solar IQR at Exhibit 1-A at 134 (C.R. 109), Appx9054; Trina Initial Questionnaire Response (Jun. 3, 2022) (P.R. 279-297/C.R. 83-107) (Trina IQR) at 3), Appx7915.  Commerce found that China is the country of origin of the machinery used by both respondents to produce solar cells in Thailand.  *Id.* at 77, Appx1132 (citing Canadian Solar Fourth Supplemental Questionnaire Response (P.R. 487/C.R. 221) at Exhibit S4-1, Appx16512-16605; Trina Fourth Supplemental Questionnaire Response (P.R. 486/C.R. 219-220) at Exhibit 2 (C.R. 220), Appx16482-16485).  Commerce also found

27

that both Thai producers sourced all or nearly all of the most valuable, high-tech inputs–wafers, silver paste, solar glass, aluminum frames, junction boxes, and backsheet–from China.  IDM at 67, Appx1122.  These inputs (wafers, silver paste, solar glass, aluminum frames, junction boxes, and backsheet) are the "most important" to solar cell and module production. IDM at 109, Appx1164 (citing Solar PV Trade and Manufacturing: A Deep Dive, Bloomberg NEF (Feb. 2021) at Figure 17, Appx1443)[1].  And China dominated the market for polysilicon wafers, which is the primary upstream solar cell input, accounting for nearly all global production.  *Id.* at 26 (citing *Circumvention Request* at 28-30, Appx1290-1292); *see also Bloomberg NEF Report* at Figure 7, Appx1435.

These facts, taken in totality, present Commerce with a circumvention scenario in which "large solar conglomerates are incentivized to 'spin off' production of solar cells into third countries, and in which third country producers are left with little choice but to source solar wafers from China." IDM at 26, Appx1081.  This scenario, in conjunction with the importance of R&D to the solar industry, warrants emphasis on R&D because the "nature

---

[1] The Bloomberg Report is publicly available at https://www.csis.org/analysis/industrial-policy-trade-and-clean-energy-supply-chains, last visited Sept. 17, 2024.

of R&D is such that, once carried out, it is easily transmissible across borders." *Id.*

Plaintiffs further contend that, because the cell and module stages of the production are technically complex relative to the overall production process for solar modules, and because those stages were carried out in Thailand, Commerce wrongly emphasized the R&D factor. Pls. Br. at 40-42. This misconstrues Commerce's finding. Commerce found that cell and module production are more versatile than wafer production and can be easily relocated to third countries. IDM at 66, Appx1121 (quoting *Bloomberg NEF Report* at Appx1439, Appx1445). This finding is relevant because the remainder of the paragraph 1677j(b)(2) "minor or insignificant" factors (level of investment, nature of the production process, extent of the production facilities, and value added in the third country) fail to account for the relative ease with which the cell and module stages of the production process, even if technically complex, can be relocated to a third country. As Commerce explained, it is the fungible nature of R&D that enables circumventing behavior. IDM at 66, Appx1121 (finding that R&D "only needs to be done once and can be done at any location."). Therefore, the extent to which R&D is carried out in China–instead of the third country–is particularly relevant under this circumvention scenario. By contrast, when the investment, inputs or manufacturing equipment used to produce solar modules are largely

facilitated by Chinese producers, those factors are still accounted for in Commerce's analysis as Thai production.  In this case, the wide disparity in R&D expenses incurred by the respondents in Thailand and their affiliates in China demonstrates the true extent of the production process occurring in China.

NextEra disagrees, asserting that the amount of R&D carried out in *China* somehow supports a finding that the level of R&D in *Thailand* was not minor.  NextEra Br. at 18-21.  This is non-sensical, because the statute directs Commerce to evaluate the "level of R&D in the *foreign country*." 19 U.S.C. § 1677j(b)(2)(B) (emphasis added).

NextEra also maintains that Commerce wrongly considered affiliation in determining to value the level of R&D over the other "minor or insignificant" factors.  NextEra Br. at 21-22.  This argument is premised on the erroneous assumption that Commerce must take into account the 19 U.S.C. § 1677j(b)(3) factors separately from its determination of whether the production process is minor or insignificant.  But the statute provides only that Commerce "shall take into account" the factors listed in paragraph 1677j(b)(3).  Neither the statute nor the SAA explain how or in what manner these factors should weigh on Commerce's analysis.  Absent explicit congressional guidance, Commerce's methodology should stand.  *Al Ghurair I*, 536 F. Supp. 3d at 1374.

Further, Congress intended for Commerce to consider the "particular circumvention scenario," SAA at 893, in evaluating the paragraph 1677j(b)(2) minor or insignificant factors. This instruction suggests that the discretionary paragraph 1677j(b)(3) factors–which include trade patterns as well–should guide Commerce's overall minor or insignificant determination.

Plaintiffs further repeat their claim that emphasis of the R&D factor was inconsistent with past circumvention determinations. Pls. Br. at 42-43 (citing *Certain Welded Carbon Steel Standard Pipes and Tubes from India,* 87 Fed. Reg. 52,507 (Dep't Commerce Aug. 26, 2022) (prelim. circumvention det.), and accompanying PDM at 16; *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*, 88 Fed. Reg. 21,980 (Dep't Commerce Apr. 12, 2023) (prelim. circumvention det.), and accompanying PDM (*Steel Tubing from Taiwan PDM*) at 14). But in both cases, Commerce found that R&D was not significant to those industries. Therefore, it follows that Commerce would find that R&D is not an informative factor when evaluating circumvention for products in those industries. *See, e.g.*, *Steel Tubing from Taiwan PDM* at 14 (finding that "a lack of significant {R&D} expenses with respect to {subject merchandise} does not necessarily mean that the processing in Vietnam is minor or insignificant."). Naturally, Commerce would not draw the same conclusion in this case, when it had found that R&D is particularly important to solar production. IDM at 65, Appx1120. By

weighing the minor or insignificant factors according to the nature of the relevant industry and circumvention scenario, Commerce appropriately followed congressional intent.  SAA at 893.

B.   Commerce Reasonably Considered the Minor or Insignificant Factors to Find the Production Process in the Thailand to be Minor

Commerce reasonably found that the production process in Thailand for both respondents, when considering the totality of the factors, was minor or insignificant.  Although Commerce found that the factors other than the level of R&D (for both respondents) and the value added in Thailand (for Trina) did not support a finding that the production process in the third country was minor, Commerce nonetheless considered those factors in its overall determination.  In emphasizing the R&D factor, as discussed above, Commerce considered that, for both respondents, investment was facilitated by Chinese affiliates.  IDM at 66, Appx1121.  Commerce also considered that, with respect to the nature and extent of the production process, both respondents sourced machinery and inputs from Chinese affiliates.  *Id.* at 67, Appx1122.  In sum. Commerce's determination to "elevate" R&D over those factors is supported by substantial evidence.

Plaintiffs further contend that "Commerce has never found a process to be minor or insignificant when less than a majority of the five factors weighed in favor of finding the process to be minor or insignificant."  Pls. Br.

32

at 36-37.  However, plaintiffs identify no instance when Commerce has
articulated a "majority rule" for determining whether a given production
process is minor or insignificant.   Were Commerce to apply a majority rule,
such a rule would be contrary to congressional intent.  The minor or
insignificant factors are intended to leave Commerce with "flexibility" in
administering the statute.  S. Rep. 103-412 at 82.  Moreover, Commerce
evaluates the factors "depending on the particular circumvention scenario."
SAA at 893.  A majority rule would effectively reduce Commerce's minor or
insignificant determinations to a counting exercise that would frustrate
Commerce's ability to ascribe weight to the factors according to the
circumvention scenario.

Likewise, Commerce's circumvention determination with respect to
Malaysia does not contradict its determination in this case.  Pls. Br. at 38-39
(citing *Final Determination* and the accompanying IDM (*Malaysia IDM*) at
50); NextEra Br. at 22-23 (citing the same).  Rather, Commerce's finding with
respect to Jinko Solar Technology Sdn. Bhd. and Jinko Solar (Malaysia) Sdn.
Bhd. (Jinko) in the Malaysia matter supports Commerce's finding in this
case.  Commerce found Jinko's level of R&D in the third country (Malaysia)
*not* minor.  *Malaysia IDM* at 49.  The only factor supporting a minor or
insignificant finding for Jinko was the extent of the production facilities in
the third country, *id.* at 51, and thus Commerce's decision regarding Jinko's

overall processing in Malaysia is consistent with Commerce's decision in this case to place special emphasis on the R&D factor.

Lastly, NextEra maintains at pages 13-18 of its brief that the plain meaning of the statute and the use of the term "screwdriver operation" in the SAA require Commerce to find that the production process in this case was not minor or insignificant. That interpretation is misguided, because the statute identifies the factors for Commerce to consider, and the SAA directs Commerce how to consider those factors. The fact that the SAA uses the term "screwdriver operation" does not limit the statutory definition of "minor or insignificant." Rather, "the SAA's reference to 'screwdriver assembly operations' plainly alludes to production operations in a third country that are 'minor or insignificant.'" *HLDS Steel,* No. 21-00638, 2024 WL 244937, at *4 n.7 (quoting 19 U.S.C. § 1677j(b)(1)(C)). Commerce's role is to evaluate whether production of solar cells in Thailand is "minor or insignificant" given the statutory criteria in 19 U.S.C. § 1677j(b)(2). *Id.* at *4. Commerce did exactly that, and because its decision is supported by substantial evidence, it should be sustained.

V.  **Commerce's Finding that Action Was Warranted Under the Statute to Prevent Circumvention is Supported by Substantial Evidence**

To include circumventing merchandise within the scope of an order, Commerce must determine that action is necessary to prevent "evasion."  19

U.S.C. § 1677j(b)(1)(E). Commerce found circumvention of the *Solar Orders* through Thailand and found that evidence pertaining to the factors in 19 U.S.C. § 1677j(b)(3) indicated that circumvention was occurring and would continue to occur without the discipline of the *Solar Orders*. IDM at 76, Appx1131. Commerce need not consider any factors beyond those contained in 19 U.S.C. § 1677j(b)(3) before determining that the inclusion of circumventing merchandise in the scope of an order is appropriate. *HLDS Steel*, No. 21-00638, 2024 WL 244937, at *4.

Plaintiffs do not dispute Commerce's finding, nor do they identify any deficiency in Commerce's analysis of the record evidence under paragraph 1677j(b)(3). Almost all of plaintiffs' argument with respect to this factor pertains to Commerce's prior determinations that the country of origin of a solar cell is based on the country in which the P/N junction is formed. Pls. Br. at 62-67. Absent any authority, plaintiffs maintain that, because Commerce has found that the formation of the P/N junction is determinative of the country of origin of subject merchandise under the *Solar Orders*, Commerce is precluded from including Thai-origin solar cells in the scope of the *Solar Orders*. In contrast to plaintiffs' bare contention, *Bell Supply* explains that "legislative history indicates that § 1677j can capture merchandise that is substantially transformed in third countries, which further implies that § 1677j and the substantial transformation analysis are

35

not coextensive." *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1231 (Fed. Cir. 2018) (citing Conference Report accompanying the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, 102 Stat. 1107 (1988); SAA at 893). Accordingly, inclusion of cells that are substantially transformed in Thailand but are nonetheless circumventing is entirely lawful.

Finally, plaintiffs wrongly attempt to analogize between this case and *Lawn Mowers*, in which Commerce found it inappropriate to conduct a circumvention inquiry on merchandise that was excluded from the scope of an order. Pls. Br. at 64 (citing *Certain Walk-Behind Lawn Mowers and Parts Thereof From the People's Republic of China*, 88 Fed. Reg. 13,434 (Dep't Commerce Mar. 3, 2023), and accompanying IDM). The comparison is inapposite, because in *Lawn Mowers* Commerce had explicitly *excluded* the merchandise imported into the United States from the scope of the order. 88 Fed. Reg. 14,345. This was consistent with *Wheatland Tube*, which provided that capturing excluded merchandise in an order through a circumvention finding would "frustrate the purpose of the antidumping laws because it would allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998).

In this case, Commerce found that solar cells for which a P/N junction formed in a third country are not within the scope the *Solar Orders* because they are not China-origin. IDM at 7. But unlike the lawnmowers case, the merchandise imported to the United States in this case is of the same class or kind as in-scope merchandise from China. The circumvention statute allows inclusion of merchandise from an inquiry country that "is of the same class or kind as any merchandise produced in" the order country. 19 U.S.C. § 1677j(b)(1). Put another way, when an intermediate input shipped from the order country to the inquiry country is already subject merchandise, the further processed merchandise shipped to the United States would have always been within the scope of the order country because no "substantial transformation" had taken place. *Bell Supply*, 888 F.3d at 1229. In those cases, Commerce conducts scope proceedings. *Id.* In contrast, if out-of-scope merchandise from an order country is shipped to the inquiry country and substantially transformed into the same class or kind as subject merchandise, then Commerce may conduct a circumvention inquiry under 19 U.S.C. § 1677j(b) to determine whether to bring that further processed merchandise under the protection of an order. That is because "{c}ircumvention can only occur if the articles are from a country not covered by the relevant AD or CVD orders" *Bell Supply*, 888 F.3d at 1229.

Reading the statute otherwise would "render {§ 1671j} moot."  IDM at 7,

Appx1062.

CONCLUSION

For these reasons, we respectfully request that the Court sustain the

*Final Determination* and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/  REGINALD T. BLADES, Jr.
Assistant Director

/s/ STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-5196
Email:  stephen.tosini@usdoj.gov

September 25, 2024                Attorneys for Defendant

## CERTIFICATION OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 8,170 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Stephen C. Tosini