# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

## NONCONFIDENTIAL VERSION

| | |
|---|---|
| CANADIAN SOLAR INTERNATIONAL LIMITED, *et al.*, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| and, | ) |
| | ) |
| NEXTERA ENERGY CONSTRUCTORS, LLC, | ) |
| | ) |
| *Plaintiff-Intervenor,* | ) Ct. No. 23-00222 |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| *Defendant,* | ) |
| | ) |
| and, | ) |
| | ) |
| AUXIN SOLAR INC., | ) |
| | ) |
| *Defendant-Intervenor.* | ) |

## NONCONFIDENTIAL REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD OF PLAINTIFFS CANADIAN SOLAR INTERNATIONAL LIMITED AND CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.

Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks
**HOGAN LOVELLS US LLP**
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel for Canadian Solar
International Limited and Canadian
Solar Manufacturing (Thailand) Co.,
Ltd.*

Dated: November 15, 2024

# TABLE OF CONTENTS

I.  The Government Has Improperly Ignored the Governing Legal Standard under *Loper Bright V. Raimondo* ........................................4

II.  Commerce's Finding that THSM and CSIL Conducted "Minor or Insignificant Processing" in Thailand Despite Their Major and Significant Manufacturing in Thailand Is Not in Accordance with Law ..............................................................................................8

III.  Commerce's Singular Reliance on R&D as the Decisive "Minor or Significant" Factor Is Not in Accordance with Law .......................13

    A.  Commerce Made the R&D Factor Determinative in its "Minor or Insignificant" Analysis……………………………………………15

    B.  The Government Fails to Show that the Statute Permits R&D – Which Is Distinct from the Manufacturing and Assembly Process – to Be Controlling……………………………………………...16

IV.  The Government Has Not Shown that Commerce's Findings Are Supported by Substantial Evidence...................................................22

    A.  Commerce's Finding that CSIL and THSM's R&D in Thailand Is Insignificant Is Not Supported by Substantial Evidence……...…………………………………………………………23

    B.  Commerce Lacks Substantial Evidence to Support its Finding that the Value of Processing Performed by THSM in Thailand Represents a Small Proportion of the Value of the Merchandise Imported into the United States…………………………………...27

V.  The Government Has Not Substantiated Commerce's Failure to Demonstrate that an Affirmative Finding Was "Appropriate"........35

VI.  Conclusion ...............................................................................38

# TABLE OF AUTHORITIES

## CASES

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) .................7, 14

*Ausimont USA, Inc. v. United States*, 882 F. Supp. 1087 (Ct. Int'l Trade 1995) ........................................................................................6

*Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, (1974)...............5

*Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, (1940)..................................5

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed.Cir.2003).....33

*Deacero S.A. de C.V. v. United States*, 37 C.I.T. 1457 (2013)..................6

*Hlds (B) Steel Sdn Bhd v. United States*, No. 21-00638, 2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024)............................................................12

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ..... passim

*Macao Com. & Indus. Spring Mattress Mfr. V. United States*, 437 F. Supp. 3d 1324 (Ct. Int'l Trade 2020) ..............................................6, 22

*SeAH Steel VINA Corp. v. United States*, 182 F. Supp. 3d 1316 (Ct. Int'l Trade 2016)......................................................................................33

*Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017)...................................................................7

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001), *aff'd*, 332 F.3d 1370 (Fed. Cir. 2003).........................................................33

*U.K. Carbon & Graphite Co. v. United States*, 37 C.I.T. 1295 (2013)......6

*United States v. Eurodif S.A.*, 555 U.S. 305, (2009) ...............................6

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, (1951) ..................22

## STATUTES

19 U.S.C. § 1516a ...................................................................................4

19 U.S.C. § 1677j ........................................................................... passim

i

OTHER AUTHORITIES

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023), (Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam) ........................................................2

*Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 87 Fed. Reg. 52,507 (Dep't Commerce Aug. 26, 2022)..............................20

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 43,809 (Dep't Commerce May 20, 2024) (Initiation of Less-Than-Fair-Value Investigations) .................37

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 43,816 (Dep't Commerce May 20, 2024) (Initiation of Countervailing Duty Investigations) ...................37

*Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 46,712 (Dep't Commerce Aug. 6, 2012)...........................34

*Hot-Rolled Lead and Bismuth Carbon Steel Products from Germany and the United Kingdom,* 64 Fed. Reg. 40,336 (Dep't Commerce July 26, 1999) .............................................................................................34

*Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*, 88 Fed. Reg. 21,980 (Dep't Commerce Apr. 12, 2023) .............................20

Merriam-Webster Dictionary...................................................................28

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act .......................................................................... passim

*Certain Tissue Paper Products from the People's Republic of China,* 73 Fed. Reg. 21,580 (Dep't Commerce Apr. 22, 2008) ..............................34

**REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD OF PLAINTIFFS CANADIAN SOLAR INTERNATIONAL LIMITED AND CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.**

Plaintiffs Canadian Solar International Limited ("CSIL") and Canadian Solar Manufacturing (Thailand) Co., Ltd. ("THSM") (together "Canadian Solar" or "Plaintiffs"), submit this Reply Brief in Support of their Motion for Judgment on the Agency Record in accordance with Rule 56.2(c) of the Rules of this Court. For the reasons set forth below, Plaintiffs respectfully request that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce" or the "Department") and remand with instructions consistent with this Brief, Plaintiffs' June 13, 2024, Memorandum, ECF No. 29 ("Pls. Br."), and the Court's findings.

Canadian Solar is a solar producer that has not circumvented the antidumping and countervailing ("AD/CVD") duty orders at issue in this proceeding. Rather, for many years, Canadian Solar has operated transparently in Thailand, consistent with the rules iterated by Commerce and other government agencies until Commerce's sudden change of course in the challenged circumvention determination. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon*

1

*Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023), (Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam), Appx1225−1239 ("Final Determination") and accompanying Memorandum from James Maeder to Lisa Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Issues and Decision Memorandum for the Circumvention Inquiry With Respect to Thailand*, Case Nos. A-570-979/C-570-980 (Aug. 18, 2023), Appx1056−1224, Appx1240−1249. Specifically, following more than a decade of consistent U.S. Government determinations and guidance, Canadian Solar intentionally oriented its supply chain to comply with Commerce's instructions regarding the scope and interpretation of the AD/CVD orders. The Government's September 25, 2024 Brief in Opposition, ECF. No. 44 ("Def. Br.") fails to demonstrate that Commerce supported its sudden about-face with substantial evidence or otherwise acted in accordance with law. This case should be remanded so that the agency

can correct its faulty findings of circumvention with respect to Canadian Solar.

In deciding this proceeding and as set forth below, we respectfully ask this Court to recognize the following: (i) the Government fails to acknowledge the controlling *Loper Bright* standard of legal review and asks this Court to give deference to Commerce in a manner inconsistent with current law; (ii) the Government has not demonstrated that Commerce's determination is in accordance with law, particularly because Canadian Solar's "assembly or completion" in Thailand is not "minor or insignificant" consistent with the best interpretation of the governing statute; (iii) Commerce unlawfully made one factor, research and development ("R&D"), determinative in its "minor or insignificant" analysis; (iv) the Government fails to show that Commerce supported its findings with respect to the "minor or insignificant" factors of R&D and value-added with substantial evidence; and (v) the Government has not demonstrated that Commerce properly found the action to be "appropriate," in accordance with the statute's requirement to do so.

## I.    The Government Has Improperly Ignored the Governing Legal Standard under *Loper Bright v. Raimondo*

In reviewing a challenge to Commerce's determination in a circumvention inquiry, the Court "shall hold unlawful any determination, finding, or conclusion found. . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

The U.S. Supreme Court overturned the *Chevron* doctrine in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2268 (2024) on June 28, 2024—after Plaintiffs' opening brief but prior to the Government's response brief. The U.S. Supreme Court in *Loper Bright* enunciated that "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and shall not defer to agency interpretations of ambiguous statutes. *Id.* at 2273. The U.S. Supreme Court explains that courts shall read the statute "{as} if no agency were involved." *Id.* at 2266. In short, the courts are instructed to determine the "best reading" of an ambiguous statute that "the court, after applying all relevant interpretive tools, concludes is best"—this is so irrespective of the agency's reading. *Id.*

Glaringly, the Government entirely ignores *Loper Bright* in its brief and cites to out-of-date standards for how this Court should interpret whether a Commerce determination is in accordance with law. In fact, the Government only addresses the substantial evidence standard of review and disregards the critical inquiry into whether Commerce's findings are in accordance with law. The holding of *Loper Bright* applies directly to this Court's mandate in this case, and it significantly broadens this Court's authority to determine, for itself, whether Commerce's findings are not in accordance with the law. *Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 27, 60 S. Ct. 416, 418, 84 L. Ed. 558 (1940) (finding that a court must follow intervening change in law during the pendency of litigation); *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 715–16, 94 S. Ct. 2006, 2018, 40 L. Ed. 2d 476 (1974) (noting that a court's obligation to observe intervening legal developments applies to changes that are "constitutional, statutory, or judicial").

Prior U.S. Court of International Trade ("CIT") and U.S. Court of Appeals for the Federal Circuit ("CAFC") cases reviewing Commerce's interpretation of the circumvention statute have less persuasive

authority on this Court in light of the Supreme Court's overturning of *Chevron*. For example, the CIT has reviewed whether Commerce's findings in circumvention cases were in accordance with law, expressly citing *Chevron*, in *U.K. Carbon & Graphite Co. v. United States*, 37 C.I.T. 1295 (2013); *Deacero S.A. de C.V. v. United States*, 37 C.I.T. 1457 (2013); *Macao Com. & Indus. Spring Mattress Mfr. V. United States*, 437 F. Supp. 3d 1324, 1328 (Ct. Int'l Trade 2020); and *Ausimont USA, Inc. v. United States*, 882 F. Supp. 1087, 1093 (Ct. Int'l Trade 1995). The CIT's finding in *U.K. Carbon & Graphite Co.*, for instance, that "an agency may fill in the gap and courts must defer to that interpretation as long as it is 'based on a permissible construction of the statute' " is no longer good law. 37 C.I.T. 1295, 1311 (2013). *See also Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1328 (Ct. Int'l Trade 2020) (citing to *United States v. Eurodif S.A.*, 555 U.S. 305, 316, 129 S.Ct. 878, 172 L.Ed.2d 679 (2009) (An agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.")).

The Government claims that Commerce should be afforded "tremendous" deference. Def. Br. 15 (citing *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017)). This is incorrect—Commerce does not have unbridled authority to make an affirmative finding of circumvention, irrespective of the method of analysis it chooses. *Cf.* Def. Br. 16, 18 (citing *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ("Commerce has the discretion to decide on its own method of analysis.")). This is clearly not the legal standard in a post-*Loper Bright* world. The Supreme Court is crystal clear that courts should not defer to an agency's "permissible" reading of a statute but instead shall determine for themselves the "best reading of the statute and resolve the ambiguity." *Loper Bright* at 2266 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").

Here, the Government asks this Court to assume that Commerce's interpretation of the circumvention law is permissible. But *this Court* must interpret the law, and determine for itself whether *the best* reading of the law would support a finding of circumvention. This Court

7

is tasked with overturning Commerce's findings if they do not comport with the best reading of the statute.

Contrary to the Government's position, applying the factual record to the best interpretation of the statutory terms has nothing to do with a re-weighing of the evidence at all. This Court must assess how to define ambiguous statutory language, and whether Commerce's findings are in accordance with the best reading of that statutory language. Following *Loper Bright*, this task is now fully within the ambit of the Court, not Commerce.

## II.  Commerce's Finding that THSM and CSIL Conducted "Minor or Insignificant Processing" in Thailand Despite Their Major and Significant Manufacturing in Thailand Is Not in Accordance with Law

The circumvention statute lists five requirements that all must be met in order for Commerce to find circumvention and to impose duties on imports from a third country. 19 U.S.C. § 1677j(b)(1). Commerce made affirmative findings on all five requirements here. The main element at issue before Commerce in this circumvention inquiry (and most circumvention inquiries), and thus the core legal question before this Court, is "whether the process of assembly or completion in the foreign country . . . is minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C).

8

Thus, the threshold, key inquiry before the Court in this case is whether CSIL and THSM's "assembly or completion" of CSPV cells and modules in Thailand is actually "minor or insignificant" under the statute. Absent such a legal finding, Commerce is prohibited from extending existing AD/CVD orders to production in the inquiry country.

The Statement of Administrative Action Accompanying the Uruguay Round Agreements Act ("SAA") is an "authoritative expression by the United States concerning the interpretation and application of {the law} in any judicial proceeding in which a question arises concerning such interpretation or application" and thus highly instructive to the Court on the best reading of the statute. The SAA states that the circumvention law is intended to address "screwdriver operation{s}." SAA at 893–94. The SAA also states that "{b}ecause Commerce will find circumvention only where assembly or completion operations . . . are minor, the proposed amendments will not deter legitimate investment, characterized by the addition of substantial value." *Id*. Manufacturing plants requiring investments in the hundreds of millions of dollars and utilizing complex chemical manufacturing processes, robotics, and thousands of employees (such as Canadian

Solar's facility in Thailand) are per se not within the bounds of the circumvention statute, and certainly may not be characterized as a "screwdriver operation."

Dictionary definitions also make clear that Commerce has not applied the best reading of "minor or insignificant." Whether assembly or completion in this case meets the best reading of "insignificant" is easily resolved in this case. "Insignificant" is defined as "lacking meaning or import," "small in size, quantity, or number," "not worth considering," "not noticeable," and "not important or thought to be valuable." *See* NextEra Energy Constructors LLC ("NextEra") Br., ECF No. 43 at 8. None of these definitions of "insignificant," nor any others, in any way resemble the massive, state-of-the-art, and highly valuable manufacturing operations of CSIL and THSM's in Thailand, which required hundreds of millions of dollars to bring to life. *See* Appx19838– 19841 (reviewing Canadian Solar's large investments in Thai production). The Government fails to confront this issue at all in its brief, likely because there is no reasonable basis to conclude that the assembly or completion in Thailand is "insignificant."

Nor is CSIL and THSM's assembly or completion in Thailand anything resembling "minor." These massive Thailand operations include hundreds of millions of dollars of investment and production, as Commerce readily acknowledged in the underlying investigation. The opposite of "minor" is major—and CSIL and THSM's processing in Thailand is fairly characterized as such. Other definitions of "minor" do not resemble these Thailand operations, including "having little importance, influence, or effect, especially when compared with other things of the same type," "comparatively unimportant," and "not very important or valuable." NextEra Br. 7−8.

Moreover, the positive-negative ("p/n") junction in the solar cell exported to the U.S. market is formed in Thailand. This is critical because multiple government agencies have long agreed that this step is the crux of solar cell and module manufacturing. *See, e.g.*, SunSpark Technology Inc. Scope Ruling (Jan. 23, 2020), Appx5293 (Commerce explaining, "Put simply, wafers are not cells."). The manufacturing processes of CSIL and THSM in Thailand completely change the relevant merchandise: a wafer cannot produce electricity until it is transformed into a solar cell, and a cell is of relatively little use until it

is turned into a module. In fact, Commerce itself found those "significant" activities to be "multi-stage," "technologically sophisticated," "capital intensive," processes, requiring "highly-skilled workers" and "skilled technicians and employees with advanced degrees". Decision Memo, Appx1111, Appx1017–1018. They are thus *not* "minor or insignificant" processes. Commerce's findings are a far cry from the bounds of the circumvention law and contrary to the plain language of the statute.

Finally, the statute commands that Commerce's "minor or insignificant" analysis focus on the "process of assembly or completion" of the good in the inquiry country. This Court recently characterized "assembly or completion" as synonymous with "manufacturing" or with "production process." *Hlds (B) Steel Sdn Bhd v. United States*, No. 21-00638, 2024 WL 244937, at *4 (Ct. Int'l Trade Jan. 23, 2024). Commerce's finding that such substantial manufacturing operations in Thailand are "minor or insignificant" is thus plainly not in accordance with law.

### III.   Commerce's Singular Reliance on R&D as the Decisive "Minor or Significant" Factor Is Not in Accordance with Law

The statute does not allow the agency to elevate one "minor or significant" factor above all others and consider it to be determinative, particularly without an explanation supporting a skewed weighing of the statutory criteria. However, that's exactly what Commerce did in this case with respect to R&D. Commerce's decision is not in accordance with law.

The Government contends that "Commerce reasonably placed particular emphasis on R&D" and concedes that Commerce's finding with respect to R&D was critical in this proceeding. Def. Br. 26. However, the Government fails to explain why R&D should be afforded outsized significance in the solar industry or how Commerce's singular reliance on this factor above the other factors is in accordance with the statutory scheme.  Def. Br. 26. Rather, the Government emphasizes the discretion afforded to Commerce and states that the sourcing of wafers in China, "in conjunction with the importance of R&D to the solar industry, warrants emphasis on R&D because the 'nature of R&D is such that, once carried out, it is easily transmissible across borders.' "

*Id.* at 28–29. Specifically, the Government asserts that "even if plaintiffs' methodology were permissible, absent a clear statutory directive, Commerce's choice stands." Def. Br. 21 (citing *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ("Based on the absence of a designated methodology, Commerce has the discretion to decide on its own method of analysis.").

The Government's position on Commerce's discretion is no longer applicable under *Loper Bright*. While Commerce has discretion in selecting a reasonable methodology, it may not render findings that are not in accordance with law and ignore the statutory analysis required by Congress. The production of Canadian Solar and THSM in Thailand is undoubtedly significant and major by any understanding of those statutory terms—irrespective of the level of R&D happening within Thailand. In short, Commerce must act within the bounds of the best reading of the statute in administering the circumvention provision, including its application of the R&D factor.

### A.    Commerce Made the R&D Factor Determinative in its "Minor or Insignificant" Analysis

There can be no serious dispute that Commerce made R&D determinative in this case. Commerce rendered a *negative* determination with respect to Jinko Solar in the companion Malaysia investigation where only one factor (extent of production facilities) weighed in favor of circumvention—notwithstanding, Commerce made affirmative determinations with respect to CSIL (and TTL) in Thailand where R&D was found to weigh in favor of circumvention (also the value of processing with respect to CSIL). Pls. Br. 38–39. The key – and controlling – difference among Commerce's determinations was R&D.

Moreover, the Government all but admits that R&D expenses were determinative of its "minor or insignificant" finding. Def. Br. 26 ("Commerce placed particular emphasis on the level of R&D in Thailand."). This concession contradicts the SAA's directive that "no single factor {in the minor or insignificant processing analysis under Section 1677j(b)(2)} will be controlling." H.R. Rep. No. 103-316 (1994) at 893. Indeed, the Government's brief at the outset admits that legally Commerce *must* "take into account" each factor and that "no single factor controls." Def. Br. 4. The Government is then forced, however, to

15

contradict its own legal positions by emphasizing the determinativeness of one single factor— R&D. Commerce's adoption of this methodological approach in its analysis is a fatal flaw because Commerce did not support its decision to assign decisive weight to R&D.

Commerce's reliance on R&D amounts to a violation of law, irrespective of the factual accuracy of Commerce's evidentiary findings and the weight to which Commerce assigned R&D in the solar industry in Thailand. The agency's decision to elevate the importance of R&D such that it controlled the entire circumvention finding in this case is not a methodological decision falling within the bounds of its discretion but rather is contrary to the statutory scheme. The Government cannot bridge this disconnect between the SAA's articulation of the bounds of the law and Commerce's insistence on making just one of the five factors controlling.

## B. The Government Fails to Show that the Statute Permits R&D – Which Is Distinct from the Manufacturing and Assembly Process – to Be Controlling

The Government also fails to explain why Commerce's findings conform with the statute's focus on the "process of assembly or completion" in the inquiry country. 19 U.S.C. § 1677j(b). Commerce's

findings are focused on the *one* "minor or insignificant" factor, i.e., R&D, that is not directly connected with the manufacturing process. This focus stands in contrast to the other four statutory factors which directly address the manufacturing process in the inquiry country, by using the language "manufacturing", "production", and "processing": (1) the level of investment in manufacturing; (2) the nature of the production process; (3) the extent of the production process; and (4) the value of processing performed. Commerce cannot lawfully hang its entire case on the one factor that is furthest from the controlling statutory language.

The SAA likewise focuses on manufacturing processes, explaining that "{b}ecause Commerce will find circumvention only where *assembly or completion operations* . . . are minor, the proposed amendments will not deter *legitimate investment, characterized by the addition of substantial value.*" 1994 U.S.C.C.A.N. 4040, 4217 (emphases added).

R&D is not an aspect of the "process of assembly or completion" of solar products. A company's R&D does not contribute directly to its manufacture of finished products to sell to consumers. R&D is also a readily transferrable cross-border asset, so its demonstrative value is

relatively minor in terms of the *Thailand* production process. The Government ignores this distinction, emphasizing instead that R&D "is easily transmissible across borders." Def. Br. 28–29. Rather than explain why R&D is uniquely important to the "assembly or completion" process, this assertion underscores that R&D is, even if Commerce's viewpoint is accepted on its face, only tangentially related to actual production in Thailand. The "assembly or completion" of solar products occurs in Thailand, and the Government fails to explain why the one factor peripheral to actual production should be considered determinative in the agency's assessment of this production process.

Indeed, in its rush to emphasize the discretion afforded to Commerce in making methodological decisions, the Government neglects to demonstrate how the statute can reasonably be constructed to permit the supremacy of the single R&D factor. The statute mandates that the agency "shall take into account" *each* of the five specified factors, joined with an "and," in making the "minor or insignificant" determination. 19 U.S.C. § 1677j(b)(2). The Government suggests, however, that Commerce could reasonably discount certain of these mandatory factors based on the facts of each case.

18

The Government is also untroubled that this is the first circumvention inquiry—ever—in which Commerce found the process to be minor or insignificant notwithstanding a majority of the factors weighing against a finding of circumvention. The Government posits: "A majority rule would effectively reduce Commerce's minor or insignificant determinations to a counting exercise that would frustrate Commerce's ability to ascribe weight to the factors according to the circumvention scenario." Def. Br. 39. But, the statute requires Commerce to assign weight to each factor. Consideration of each of the five factors is not discretionary. Under the Government's theory, Commerce could strip any of these mandatory factors of their weight and importance. Congress did not provide this discretion to the agency. Congress did not, for instance, say that Commerce "may" consider these factors or indicate that the factors were merely illustrative of the type of analysis that should be undertaken (by inclusion of the phrase "such as," for example). Rather, Congress specified a list of criteria that needed to be duly weighed by Commerce in order to expand the breadth of an order pursuant to the authority of Section 1677 j(b)(2). As such, there is no reasonable construction of the statute that allows Commerce

19

to elevate R&D above all other factors to make a finding of circumvention.

The statute does not allow Commerce to conclude—which it has never done prior—that R&D is uniquely determinative of circumvention and base its entire affirmative decision on this one factor. This Court should not allow Commerce to chart this novel approach here. This is particularly because the Government has failed to grapple with contradictory agency precedents in which Commerce has consistently indicated that R&D was less important relative to the other "minor or insignificant" factors. Pls. Br. 42 (*citing Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 87 Fed. Reg. 52,507 (Dep't Commerce Aug. 26, 2022) and *Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan*, 88 Fed. Reg. 21,980 (Dep't Commerce Apr. 12, 2023)). The Government acknowledges that "Commerce has found in other circumvention determinations that R&D is not an important factor," but does not explain why the agency should sometimes be permitted to base its entire finding on this factor and at other times assign it no value. Def. Br. 26. The statute does not offer this discretion. Instead, the statute mandates consideration of each of

the five factors. The Government's failure to engage with and distinguish Commerce's previous discounting of the R&D factor underscores the unlawfulness of the agency's determination in this proceeding.

Fundamentally, the Government's insistence that the level of R&D in the inquiry country can be determinative is contrary to the statue's mandate that Commerce determine whether the "process of assembly or completion" is minor or insignificant. Diverse industries, including ones that Commerce has previously examined, *see* Pls. Br. 42, illustrate this principle. For example, the fabrication-less ("fabless") semiconductor manufacturing model has prevailed for many years in that industry, with R&D occurring primarily in the United States and manufacturing often being done in Asia. The bulk of the R&D happening in a separate location from the manufacturing does not make the Asian "process of assembly or completion" "minor or insignificant." The same is true with respect to solar cells and modules. The statute does not allow Commerce to elevate R&D above all other factors, and the Government's brief has failed to demonstrate otherwise. The Court

should thus recognize that Commerce's decision was not in accordance with law.

## IV. The Government Has Not Shown that Commerce's Findings Are Supported by Substantial Evidence

The Government's brief also does not demonstrate that substantial evidence supports Commerce's affirmative findings. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951). "Substantial evidence" generally connotes a reasonableness review. As such, when addressing whether the agency supported its decision with substantial evidence, the CIT analyzes whether the challenged action "was reasonable given the circumstances presented by the whole record." *Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1328 (Ct. Int'l Trade 2020).

There is no disagreement in this case that the (1) level of investment, (2) nature of production process, and (3) extent of production facilities factors under Section 1677j(b)(2) unambiguously weigh against a finding of circumvention based on the record evidence and Commerce's findings on those statutory factors. That is, the

majority of the "minor or insignificant" factors indicate that Canadian Solar's investments in Thailand are not "minor or insignificant." This fact is not in dispute. And yet, the agency nonetheless made an affirmative determination despite the weight of the evidence falling definitively against a finding of circumvention.

The only substantial evidence issues in dispute involve the remaining two factors. Here, Commerce's "minor or insignificant" finding lacks substantial evidence with respect to both (1) the level of R&D in Thailand, and (2) the value of processing in Thailand.

## A.   Commerce's Finding that CSIL and THSM's R&D in Thailand Is Insignificant Is Not Supported by Substantial Evidence

Commerce's lack of substantial evidence is particularly glaring with respect to the R&D factor. The Government states that R&D is of "preeminent importance" in the solar industry but does not explain how substantial evidence supports this critical and determinative characterization employed by Commerce. Def. Br. 26. Rather, the Government tries to shift the burden to Plaintiffs, stating that "they offer no support for this position and no evidence to rebut the information cited by Commerce." *Id.* First of all, Commerce carries the

burden of supporting its findings with substantial evidence, a burden it has not carried. And in any event, Canadian Solar *has* provided ample evidence undermining Commerce's claim to the "preeminent importance" of R&D in the solar industry.

The Government asserts that R&D is the most important consideration because "{i}n 2021 alone, the Trina Group invested $150 million and the Canadian Solar Group {globally} invested $58 million in R&D." Def. Br. 26. These sums pale in comparison to the hundreds of millions of dollars that Canadian Solar alone invested in its Thai manufacturing operations. *See* Second Tranche Case Br. of Canadian Solar, Appx19838–19841 (reviewing the hundreds of millions of dollars Canadian Solar has invested in Thai production). (The Government's reference to $58 million in *global* R&D expenditure is particularly striking because the source, Canadian Solar Inc.'s annual report, shows that R&D constituted a relatively small portion of the Group's total $718,931 million in 2021 operating expenses. In fact, R&D – the "preeminent" factor according to Commerce – is year-after-year Canadian Solar's smallest operating expense category in the annual report relied upon by Commerce. Appx8836–8837.) Accordingly, the

Government's mere citation to this 2021 R&D expenditure does not lead a reasonable mind to conclude that this one factor is the most important, determinative factor, particularly when the cost of establishing actual manufacturing operations was many multiples greater. Def. Br. 26. Substantial evidence does not support Commerce's bare conclusion that R&D is of uniquely preeminent importance in the solar industry so as to override all of Commerce's prior circumvention findings and contrary to any other industry Commerce has ever investigated in a circumvention case.

The Government also faults Canadian Solar for not describing how the solar industry compares to industries where Commerce has assigned little weight to the R&D factor, such as rectangular pipe and tube and lead and carbon steel. *Id*. Making this distinction, however, was Commerce's task, not that of Plaintiffs. To render a decision supported by substantial evidence, the agency should have demonstrated, in a non-arbitrary fashion, that R&D is actually uniquely critical in the solar sector. *Id*. at 26−27. But, it skipped this requirement and simply offered its conclusion. Commerce's unreasoned

conclusion that R&D is uniquely important and thus determinative in the solar industry is not supported by substantial evidence.

Not only does the Government's brief fail to point to substantial evidence supporting its characterization of R&D, but the Government also refuses to acknowledge the substantial scale of Canadian Solar's R&D undertaken in Thailand. THSM employs skilled engineers in Thailand who innovate regularly to improve product and manufacturing efficiency. Appx10734–10735. And yet the Government posits that "Canadian Solar's R&D activities, standing alone and without reference to its overall production process, offers little analytical value." Def. Br. 18. The Government cannot simply dismiss that important R&D activities are performed in Thailand by claiming that the agency needs to conduct a comparative analysis to understand them. The record demonstrates that Canadian Solar engages in substantial R&D activities in Thailand – from product development to employee training and cultivation – but the Government has failed to explain why it may dismiss these activities in their totality. *See* Pls. Br. 46. Indeed, Commerce verified that THSM dedicated significant funds to R&D during the period of investigation. Appx18669–18706; Appx19729. The

agency declined to consider the absolute value of these activities, unlawfully insisting instead on a comparative analysis. Accordingly, Commerce failed to support its decision with substantial evidence.

**B.** **Commerce Lacks Substantial Evidence to Support its Finding that the Value of Processing Performed by THSM in Thailand Represents a Small Proportion of the Value of the Merchandise Imported into the United States**

The Government likewise fails to demonstrate that Commerce's decision with respect to the value of processing performed by THSM in Thailand is supported by substantial evidence. Commerce confirmed that the most important stages of production occurred in Thailand, finding, for example, "that cell production is where the essence of a solar module is realized," and that "{i}t is at this point {formation of the p/n junction} that a cell is capable of generating electricity from sunlight." Appx1018. Notwithstanding this acknowledgement that the most valuable stage of production occurs in Thailand, Commerce found the value added by such transformative processing to be small.

In defending these contradictory findings, the Government argues that the plain language of the statute "envisions quantitative analysis" and that Commerce has discretion to choose a reasonable methodology

in conducting this analysis. Def. Br. 20−21. The statute tasks the agency with assessing "whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. §1677j(b)(2)(E). An assessment of "value" entails both quantitative and qualitative factors. Merriam-Webster Dictionary explains, for instance, that value indicates both "the monetary worth of something" and "relative worth, utility, or importance." Merriam-Webster Dictionary, "Value," *available at* https://www.merriam-webster.com/dictionary/value. Contrary to the Government's position, the plain language of the statute thus does not direct a quantitative analysis.

The formation of the p/n junction and the formation of a solar cell is the *most important* step in manufacturing a usable solar module, as this step imparts the greatest *utility* out of any stage of the process. Absent formation of the p/n junction and creation of cells, a solar module would be an inert collection of polysilicon incapable of generating electricity. In fact, wafers without formation of the p/n junction have no connection to sunlight or the generation of solar

energy at all. The creation of the cell is thus the most valuable stage of the manufacturing process. *See* Pls. Br. n. 5 (referencing Commerce, U.S. International Trade Commission, and U.S. Customs and Border Protection determinations over the past decade that confirm the formation of the p/n junction to be the key origin turning point when enforcing and weighing scope and origin issues).

The Government argues that including a qualitative analysis of value "would double-count the nature of the production process" prong of the statute. Def. Br. 20. However, the Government fails to substantiate or explain why this would be the case. In its nature of production process analysis, for instance, Commerce found that "producing solar cells and solar modules in the inquiry country involves a multi-step production process that requires more precise and sophisticated equipment at multiple stages compared to producing ingots and wafers in China." Appx1107. The nature of the production process is about how the goods are produced in the inquiry country and how that *process* contributes to Commerce's analysis of whether the "process of assembly or completion" is "minor or insignificant." But, this nature of the production process analysis may be distinct from the

qualitative *value* imparted by such processes. Production of the cell, including formation of the p/n junction, is the most valuable step in the solar module production process as it makes possible the generation of electricity using sunlight. A crystalline silicon photovoltaic solar module can be neither *photovoltaic* nor *solar* without it. Commerce may not simply ignore this qualitative value in its value-added analysis by saying it has separately considered the nature of the production process. *See* SAA at 4216 (explaining the statute disallows a "mechanical, quantitative approach" to assessing circumvention claims).

The Government's argument also assumes that there must be zero overlap among the five factors, or else there would be impermissible "double counting." But, the statutory factors inevitably consider overlapping factual information. For instance, Commerce could not simply ignore the construction of a major factory under the "nature of production process" and "extent of facilities" prongs because the agency also accounted for the factory in its "level of investment" prong. The Government's "double counting" argument fails to account for the reality that the statute tasks the agency with looking at similar and

overlapping facts through different lenses to conduct the "minor or insignificant" analysis.

The Government's request that this Court consider the 1994 SAA as commentary on the 1988 statute, not the most current, 1994 statute (which was enacted at the same time of the SAA), is likewise baseless. Def. Br. 23. First of all, the Government identifies no precedent where the CIT has found a SAA to be more informative with respect to a previous statute that was replaced by the SAA's accompanying legislation. This argument simply makes no sense.

The specific text of the 1994 SAA also show that the Government's argument should be disregarded. The SAA explains:

> For example, in a number of anticircumvention investigations {under the 1988 Act}, the outcome has been determined by the current statutory requirement that the difference between the value of the parts imported into the United States (or into a third country) from the country subject to the order and the value of the finished product be "small." This mechanical, quantitative approach fails to address adequately circumvention scenarios in which only minor assembly is done in the United States (or in a third country), but for various reasons the difference in value is not "small."

1994 U.S.C.C.A.N. 4040, 4216. The SAA thus identified a failure – the mechanical, quantitative approach – in the 1988 Act that Congress sought to remedy in the 1994 statute. The SAA continues: "Because Commerce will find circumvention only where assembly or completion operations in . . . third countries are minor, the proposed amendments will not deter legitimate investment, characterized by the addition of substantial value." *Id*. at 4217. The SAA thus indicates that the previous statute's emphasis on quantitative factors was a weakness that Congress sought to remedy by emphasizing qualitative factors in the 1994 statute.

Finally, the Government mischaracterizes Canadian Solar's reliance on Commerce's findings in prior circumvention cases. Def. Br. 24 ("Commerce is not bound by these determinations . . . ."). Plaintiffs did not assert that prior agency findings bind future agency findings. Rather, Canadian Solar explained that "there are several other circumvention cases in which Commerce determined that *significantly lower* levels of value added did not support an affirmative circumvention finding." Pls. Br. 54–55. These decisions demonstrate that in other cases there have been reasonable findings by Commerce –

purely on the basis of quantitative value-added – that all stand in
contrast to Commerce's findings in the current case. If Commerce opts
to depart from these precedents, it is required to explain its rationale in
doing so and distinguish the present case—the agency has not met this
burden. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir.
2001), *aff'd*, 332 F.3d 1370 (Fed. Cir. 2003) ("{I}t is well-established that
an agency action is arbitrary when the agency offer{s} insufficient
reasons for treating similar situations differently.") (internal citation
omitted); *SeAH Steel VINA Corp. v. United States*, 182 F. Supp. 3d
1316, 1327 (Ct. Int'l Trade 2016) ("Commerce acts arbitrarily and
violates the law when it 'consistently followed a contrary practice in
similar circumstances and provided no reasonable explanation for the
change in practice.'") (citing *Consol. Bearings Co. v. United States*, 348
F.3d 997, 1007 (Fed.Cir.2003)).

Moreover, the Government's attempt to distinguish these prior
circumvention cases from the current proceeding is unavailing.
Commerce ultimately found the value of processing performed in
Thailand by CSIL to be **[        ]** percent. Appx1242. The Government
cannot explain why this figure should be treated differently from the

33

34 percent of value added that was recognized as "significant" in *Tissue Paper from China*. Pls. Br. 55−56; Def. Br. 24. It is telling that Commerce has no answer for why it made diametrically opposite determinations in these two proceedings despite its findings of **[**

**]** value added. Similarly, the Government concedes that the value added in *Ferrovanadium from Russia* of 12-26 percent is smaller than the **[       ]** percent value add at issue here—notwithstanding, the Government simply dismisses this difference as a result of claimed price "volatility" in the ferrovanadium industry. *Id*. This conclusory dismissal of relevant precedent highlights the arbitrariness of Commerce's value- added finding with respect to Canadian Solar (*e.g.*, there was no assessment of the relevance of "price volatility"). And, the Government asks this Court to ignore *Hot-Rolled Lead and Bismuth Carbon Steel Products*, in which Commerce rendered a negative circumvention determination despite finding that the value of processing "range{d} from approximately 10 percent to 29 percent." Def. Br. 24; 64 Fed. Reg. 40,336, 40,340. The Government emphasizes that there Commerce did not enunciate whether these figures weighed for or against a finding of circumvention and simply made an overall negative

determination. This is beside the point— that is, Commerce found no circumvention in cases where the value of processing was as low as 10 percent. Commerce has thus failed to support its decision with substantial evidence. Accordingly, this Court should remand to Commerce to support its decisions with respect to R&D and value-added in Thailand using substantial evidence.

## V.   The Government Has Not Substantiated Commerce's Failure to Demonstrate that an Affirmative Finding Was "Appropriate"

The Government also fails to demonstrate that Commerce's Final Determination was "appropriate," as required by the governing statute. Commerce may only issue an affirmative circumvention determination if it finds that it is "appropriate" to do so under 19 U.S.C. § 1677j (b)(1)(E). This is a mandatory element of the statute. The Government posits that this finding was unnecessary because "Commerce need not consider any factors beyond those contained in 19 U.S.C. § 1677j(b)(3) before determining that the inclusion of circumventing merchandise in the scope of an order is appropriate." Def. Br. 35. This reasoning fails to recognize, however, that the statute lists "appropriateness" as a *separate* statutory factor from the "minor or insignificant" prong

35

addressed above. Subsuming "appropriateness" with "minor or insignificant" is contrary to the statutory scheme – which lists the "appropriateness" analysis separately from and on par with the "minor or insignificant analysis" within Section 1677j(b)(1) – and would unlawfully eliminate any meaning in "appropriateness" in the statute.

Here, Canadian Solar identified compelling reasons why action was not appropriate, and the agency entirely failed to engage with these reasons. *See* Pls. Br. 65. In building its supply chain, Canadian Solar relied on a decade of Government precedent emphasizing the importance of p/n junction formation and consistent guidance from multiple agencies elevating cell manufacturing over other steps in the production process. The Government offers no rebuttal as to the appropriateness of Commerce's sudden shift from focusing on the country of p/n junction formation to wafer origin, particularly when "a wafer is no more capable of producing electricity than a sliver of river-rock." Pls. Br. 66.

Moreover, the agency had an option other than unlawfully pulling the rug out from under an industry that has built its supply chain to comply with U.S. Government guidance. That is, the appropriate means

of expanding AD/CVD liability to cover Thai cell production would have been the initiation of a new investigation on imports from Thailand. Indeed, new AD/CVD petitions were filed subsequent to the circumvention inquiry, and Commerce is currently conducting its investigations. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 43,809 (Dep't Commerce May 20, 2024) (Initiation of Less-Than-Fair-Value Investigations); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 89 Fed. Reg. 43,816 (Dep't Commerce May 20, 2024) (Initiation of Countervailing Duty Investigations).

The Government also fails to explain why the situs of wafer formation should now be determinative of country of origin for AD/CVD purposes as a result of these circumvention findings. In this respect, too, Commerce did not adhere to the statute's appropriateness requirement. Accordingly, the Final Determinations are legally deficient on the basis of the appropriateness requirement.

## VI. CONCLUSION

For the foregoing reasons, Canadian Solar respectfully requests that this Court grant its Motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this Brief and Plaintiffs' June 13, 2024, Memorandum.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks

**HOGAN LOVELLS US LLP**
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel for Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd.*

Dated: November 15, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certify that the Reply Brief, dated November 15, 2024, complies with the word-count limitation described in the Standard Chambers Procedures and Scheduling Order. The Memorandum of Law contains 6,950 words according to the word-count function of the word-processing software used to prepare the Memorandum.

Respectfully submitted,

/s/ Jonathan T. Stoel

Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks
HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW.
Washington, DC 20004
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel for Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd.*

Dated: November 15, 2024